UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARRYL STACY, DONALD STEPHEN BRADLEY, and HESHAM HAFEZ,<br><br>Plaintiffs,<br><br>v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>Defendant. | Civ. No. 18-13243 (KM) (JBC)<br><br>**MEMORANDUM OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiffs Darryl Stacy, Donald Stephen Bradley, and Hesham Hafez bring this action against defendant Tata Consultancy Services, Ltd., alleging that its hiring practices amounted to disparate treatment on the basis of race and national origin in violation of 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Defendant now moves against plaintiff Hesham Hafez to compel Hafez to arbitration and to dismiss the complaint as to him only.

I will deny the motion to dismiss as presented, order targeted discovery, and allow the parties to raise the issue of arbitrability on a motion for summary judgment.

### I.   FACTUAL BACKGROUND[1]

For purposes of a Rule 12(b)(6) motion, the well-pleaded allegations of the Complaint are assumed to be true and all reasonable inferences are drawn

---

[1] For ease of reference, certain items from the record will be abbreviated as follows:

"DE __" =        Docket Entry in this case
"Comp." =        Complaint (DE 1)

1

in favor of the plaintiff. *See New Jersey Carpenters & the Trustees Thereof v. Tishman Constr. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). Because defendant's motion to dismiss and to compel arbitration is directed only at plaintiff Hesham Hafez, and not the other plaintiffs (*See* Def. Mot. at 4 n. 1), I summarize only the relevant allegations relating to Hafez.

Defendant Tata Consultancy Services, Ltd. ("TCS") is an Indian company that provides consulting, technology, and outsourcing services. TCS has approximately 32,000 employees in the United States. TCS operates approximately 19 offices in the United States, with its principal place of business in Edison, New Jersey. (Comp. ¶¶ 1, 7 ,9).

Plaintiffs allege that TCS's U.S.-based workforce consists disproportionately—approximately 80%—of persons of South Asian or Indian origin. That state of affairs, Hafez alleges, is the result of discriminatory hiring preferences that disfavor non-members of those ethnic groups. (Comp. ¶¶ 1, 13).

Hafez is a resident of Bethel, Connecticut. He has advanced training and job experience in informational technology ("IT") services, with over twenty years of professional experience in that field. (Comp. ¶ 5). Hafez is a U.S. citizen of Egyptian national origin and Caucasian race. (*Id.*). He does not identify himself as South Asian or Indian.

In April 2015, Hafez began working for the Royal Bank of Scotland ("RBS") in Stamford, Connecticut, where he consistently received positive performance reviews and was never disciplined. (Comp. ¶ 26). In January 2018, RBS contracted with TCS to provide a large portion of the IT services that

---

| | |
|---|---|
| "Def. Br." = | Defendant's Memorandum of Law in Support of its Motions to Dismiss and Compel Arbitration (DE 7-1) |
| "Pl. Opp." = | Plaintiff Hafez's Opposition to Defendant's Motions (DE 24) |
| "Def. Reply" = | Defendant's Reply Memorandum of Law in Support of its Motions to Dismiss and Compel Arbitration (DE 25) |

RBS required. As a result, RBS terminated many of its IT employees, including Hafez. (Comp. ¶ 27).

On January 11, 2018, Hafez attended a TCS information session for soon-to-be-terminated RBS employees. There, Hafez learned that TCS was interested in hiring soon-to-be-terminated RBS employees. One open TCS position was that of systems administrator, the position then held by Hafez at RBS. (Comp. ¶ 27).

The next day, Hafez applied for the systems administrator position at TCS, indicating that he had held the systems administrator role at RBS since April 2015. (Comp. ¶ 28). Hafez was the only RBS employee who performed the systems administrator role in Stamford and was the only displaced RBS employee who applied for the corresponding job at TCS. (*Id.*).

TCS often hires employees from clients who have outsourced their in-house IT services to TCS. (Comp. ¶ 12). TCS has recognized the benefits of doing so, noting that these candidates are often well-suited for servicing a client with whom they are already familiar. (Comp. ¶ 12).

On January 24, 2018, Hafez interviewed with TCS for the position. Despite calling and emailing TCS multiple times over several months regarding the status of his application, he never received a response. (Comp. ¶ 29). On February 15, 2018, Hafez received a termination letter from RBS effective April 17, 2018. (Comp. ¶ 30). From January through April 2018, Hafez was required to train the person that TCS did hire for the systems administrator role. That person, says Hafez, was a man of South Asian race and Indian national origin who had minimal experience and was largely unqualified for the position. (*Id.*).

Hafez alleges that TCS's conduct in not hiring him constituted willful and unlawful discrimination on the basis of his race, which led Hafez to incur financial and emotional damages. (Comp. ¶¶ 35, 39)

TCS moves to dismiss the complaint as to Hafez only, and to compel Hafez to arbitrate his claims based on an arbitration provision contained in the online application Hafez completed when he applied for the systems administrator position at TCS. (*See* Def. Mot.). Because the parties' arguments

3

as to arbitrarily potentially require the court to receive evidence, I will deny the motion to dismiss, order limited discovery to the extent necessary, and allow the parties to raise their arguments regarding arbitrability in the form of a summary judgment motion. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013).

## II. LEGAL STANDARD

Where the issue of arbitrability can be decided without evidence, it will be, based on the application of the familiar Rule 12(b)(6) standard to the face of the pleadings. Failing that, however, the Court will permit discovery and decide the issue on a summary judgment standard, pursuant to the procedures laid out in Rule 56. If there is a genuine issue of fact, summary judgment will be denied and the issue of arbitrability must be tried.

Because arbitration is a "matter of contract" between two parties, "a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti*, 716 F.3d at 771 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). Pursuant to the Federal Arbitration Act ("FAA"), a court may enforce a contract to arbitrate, but only if the court is satisfied that the "making of the agreement" to arbitrate is not "in issue." *Id.*

In *Guidotti v. Legal Helpers Debt Resolution*, the Third Circuit stated the approach a court must take on a motion to compel arbitration. The judiciary must balance the competing goals of the FAA: the speedy and efficient resolution of disputes, and the enforcement of private agreements. *Id.* at 773. Reconciling murky precedent in light of those competing interests, the *Guidotti* court reasoned that where "the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint), . . . the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773–74. Such an approach "appropriately fosters the FAA's interest in speedy dispute resolution. In those circumstances, '[t]he question to be answered . . . becomes whether the assertions of the complaint, given the

required broad sweep, would permit adduction of proofs that would provide a recognized legal basis' for rejecting the affirmative defense." *Id.* at 774 (quoting *Leone v. Aetna Cas. & Sur. Co.*, 599 F.2d 566, 567 (3d Cir. 1979)).

"In many cases . . . a more deliberate pace is required, in light of both the FAA's insistence that private agreements be honored and the judicial responsibility to interpret the parties' agreement, if any, to arbitrate." *Id.*

> [The Rule 12(b)(6) standard will not be appropriate] when either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did. Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record. The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard.
>
> Under either of those scenarios, a restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement. In such circumstances, Rule 56 furnishes the correct standard for ensuring that arbitration is awarded only if there is an express, unequivocal agreement to that effect.

*Id.* at 774–76 (citations and quotations omitted).

Where the complaint and supporting documents are not dispositive as to the existence and scope of an agreement to arbitrate, or where a plaintiff responds to a motion to compel with additional facts sufficient to place the

5

issue of arbitrability "in issue," the parties should be entitled to discovery. After limited discovery, a court may then "entertain a renewed motion to compel arbitration" and should review such a motion under a Rule 56 summary judgment standard. *Id.* at 776.

In the hopefully uncommon case where material factual disputes rule out summary judgment, the arbitrability issue must be tried. The court should convene a trial "regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). In every instance, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Id.* (quoting *Par–Knit Mills*, 636 F.2d at 54). Every one of the procedural options laid out above—decision on the pleadings, summary judgment, or trial—is ultimately aimed at establishing whether that is the case.

### III.  ANALYSIS

The parties agree that New Jersey law governs the issue of whether an arbitration agreement has been formed. (Pl. Opp. at 10; Def. Reply at 6, n.1). I therefore examine the choice-of-law issue only briefly. *See James v. Glob. TelLink Corp*, 852 F.3d 262, 265 (3d Cir. 2017) ("To determine whether a valid arbitration agreement exists, we 'apply ordinary state-law principles that govern the formation of contracts.'") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007) ("[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case.").

New Jersey uses the most-significant-relationship test, which consists of two prongs. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011), *aff'd*, 709 F.3d 202 (3d Cir. 2013). First, the court must determine whether a conflict actually exists between the potentially applicable

laws, which is done by simply comparing them. *P.V. v. Camp Jaycee*, 197 N.J. 132, 143, 962 A.2d 453, 460 (2008). "[I]f no conflict exists, the law of the forum state applies." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (quoting *P.V.*, 197 N.J. at 143, 962 A.2d at 453). Second, if a conflict exists, the court must determine "which state has the 'most significant relationship' to the claim at issue by weighing the factors" in the applicable section of the Restatement (Second) of Conflict of Laws. *Id.*

Here, the potentially applicable laws are those of New Jersey (TCS's domicile and the site of this litigation) and Connecticut (Hafez's domicile and the place where he filled out the employment application). The analysis stops with the first prong because the principles of New Jersey and Connecticut law that govern contract formation are substantially similar. *Compare Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 236 N.J. 301, 319, 199 A.3d 766, 777 (2019) (describing general principles of New Jersey contract law), *with TD Bank, N.A. v. M.J. Holdings, LLC*, 143 Conn. App. 322, 331, 71 A.3d 541, 547 (2013) (describing general principles of Connecticut contract law). At least no significant distinction has been identified. There being no conflict, I apply the default rule that the substantive law of the forum state, New Jersey, shall apply.

With respect to the motion to compel arbitration, TCS relies on the arbitration provision in the online application that Hafez filled out to apply for the job as systems administrator at TCS. (Def. Mot. at 6). The complaint does not quote the online application directly, but does refer to the application process:

> On [January 12, 2018], Mr. Hafez applied for the Windows and Active Directory Administrator position with TCS, and indicated that he was a current RBS employee who had been a Windows Systems Administrator since April 6, 2015. Mr. Hafez is the only RBS employee who performed systems administrator responsibilities in Stamford, Connecticut, and is the only displaced employee who applied for the job with TCS.

(Comp. ¶ 28).

TCS, however, attaches as an exhibit to its motion a printout of Hafez's online job application. (*See* DE 7-2). An arbitration clause within that application states the following:

> I hereby agree to submit to binding arbitration before a neutral arbitrator all disputes and claims arising out of the submission of this application, including without limitation any claims for discriminatory failure to hire, breach of contract, or breach of implied good faith and fair dealing. I understand and acknowledge that I am waiving my right to a jury trial. I further understand that any binding arbitration must be brought in my name as an individual and not as a plaintiff or a class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's claim and may not otherwise preside over any form of a representative or class proceeding. Such arbitration shall be conducted in accordance with the rules of the Employment Arbitration Rules & Procedures of the American Arbitration Association ("AAA Rules") then in effect and will be governed by Federal Arbitration Act (9 U.S.C. § 2 et seq.). The AAA Rules are available at www.ard.org or will, upon your request, be provided by TCS. . . . The arbitrator will be empowered to grant any type of relief . . . .

(*See* DE 7-2 at 8). TCS contends that the above-quoted language is a valid, enforceable arbitration agreement, and that the complaint's allegations of hiring discrimination fall squarely within its scope. (Def. Mot. at 7-8).

One of Hafez's arguments in response is that there was no consideration because the arbitration clause purports to bind him, while making no corresponding commitment that TCS will arbitrate disputes. That lack-of-consideration argument is easily disposed of. Under the law of New Jersey, the employer's willingness to employ a person, conditioned on the person's signing an arbitration provision, constitutes adequate consideration. *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 89 (2002) (holding that arbitration agreement contained in employment application "was supported by consideration in the form of defendant's willingness to consider employment of plaintiff").

Hafez's other argument is more substantial. He states that there was no agreement formed because the arbitration provision was not emphasized like some other provisions, but instead inconspicuously displayed in an exceedingly small font and "buried" in the fifth paragraph, under a misleading header entitled "Declaration."

8

As described above, *Guidotti* requires that a court evaluate a motion to compel arbitration under a summary judgment standard in either of two scenarios: (1) when arbitrability is not apparent on the face of the complaint; or (2) when the complaint and incorporated documents facially establish arbitrability, but the non-movant nevertheless has proffered evidence sufficient to place arbitrability in issue. *Guidotti*, 716 F.3d at 774–76 ("*Under either of those scenarios*, a restricted inquiry into factual issues will be necessary. . . .") (emphasis added).

The face of the complaint, as such, is not dispositive. Still, it is foundational to the allegations of the complaint that Hafez applied for the job. Hafez does not seem to dispute that he filled out the application and that the content of the application proffered by TCS has not been altered (although he has something to say about the appearance of the copy, *see infra*). (Comp. ¶ 28) *See generally Estate of Roman v. City of Newark*, 914 F.3d 789, 796–97 (3d Cir. 2019) ("complaint, exhibits attached to the complaint, [and] matters of public record" as well as documents "that a defendant attaches as an exhibit to a motion to dismiss," if "undisputedly authentic" and "the [plaintiff's] claims are based [on them]"); *In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). Those general Rule 12(b)(6) principles has been applied in the specific context of permitting the court to consider an arbitration clause in a contract case. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168, n.2 (3d Cir. 2014) ("Because the arbitration clause at issue appears in a contract relied upon in the Complaint, we resolve the motion to compel arbitration under a motion to dismiss standard") (citing *Guidotti*, 716 F.3d at 773–75). The TCS employment application, then, is the sort of document that could be considered without exceeding the bounds of a Rule 12(b)(6) motion, and it contains an arbitration clause that is plausibly applicable.

That being so, we move to the second *Guidotti* scenario: *i.e.*, we must determine whether the non-movant has come forward with enough evidence to

9

put the question of arbitrability in play. TCS, it is true, has submitted a certification with a copy of the employment application. (DE 7-2). Hafez, however, submits in response a printout of the employment application that he contends more accurately reflects the application's appearance when he filled it out. (DE 24-1; Pl. Opp. at 6, n. 2).

Specifically, TCS's printout shows the application's arbitration provision in a 7.5 Helvetica font. In Hafez's submitted version, however, the clause appears in a 5.0 Helvetica font size. (*Id.*). Hafez takes issue with this "min[u]scule typeface" and asserts that the difference between the 7.5 font size and the 5.0 font size is legally significant to the issue of contract formation. (*Id.*; Pl. Opp. at 13).

Hafez further argues that the arbitration provision is misleadingly placed under the heading "Declaration," which fails to alert the reader to an arbitration provision that waives the right to sue. The confusion is compounded, says Hafez, because other preceding items in the application describe actual "declarations," such as the applicant's verification of truthfulness. (Pl. Opp. at 14-15).

Hafez is correct to note that the font size and conspicuousness of an arbitration provision is relevant to the analysis of whether a party has agreed to arbitrate claims. *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 236 N.J. 301, 315, 199 A.3d 766, 774 (2019) (recognizing font size as relevant in analysis for New Jersey's conspicuousness test for arbitration clauses); N.J. Stat. Ann. § 56:12-2 (directing readers to N.J. Stat. Ann. § 56:12-10, which describes how certain provisions of consumer contracts "shall be in at least 10 point type"); *Rockel v. Cherry Hill Dodge*, 368 N.J. Super. 577, 585–86 (App. Div. 2004) ("The size of the print and the location of the arbitration provision in a contract has great relevance to any determination to compel arbitration. . . ."); *Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401 (D.N.J. 2018) ("New Jersey courts have looked to the conspicuousness of an arbitration clause

10

when determining whether a party was put on reasonable notice of it.") (collecting cases).

Hafez also argues that the arbitration clause "lack[s] any emphasis that would distinguish the arbitration provision from the surrounding non-contractual language." (Pl. Opp. at 15-16). He cites to the Restatement (Second) of Contracts § 23, Reporter's Note, cmt. e, noting that one of the relevant considerations in determining whether an individual was sufficiently on notice of a contractual provision includes "the legibility and prominence of the provision." (Pl. Opp. at 13).

Whether or not these factual issues ultimately sway the issue of contract formation, the visibility and conspicuousness of the clause is potentially significant. These matters persuade me that the issue of arbitrability is not appropriate for resolution on a motion to dismiss, but better suited for a summary judgment motion. *Guidotti*, 716 F.3d at 774–76. To take just one example, the court would be interested in hearing an explanation for the disparate font sizes of the parties' printouts of the arbitration agreement. Such an explanation would almost certainly require evidence, or at least affidavits.

Discovery has been ongoing. I therefore will not directly order additional discovery, but instead will order the parties to meet and confer within ten days to determine if prioritized, focused discovery is necessary to poise this arbitrability issue for decision.

### IV. CONCLUSION

For the reasons stated in this Opinion, the defendant's motion to compel arbitration and dismiss the complaint (DE 7) is **DENIED** as presented. Within ten days, the parties shall meet and confer to determine whether additional discovery on the question of arbitrability is necessary. If any issues remain outstanding, they shall promptly set up a conference with Magistrate Judge Clark to resolve them. Once focused discovery on the arbitrability issue is

11

complete, I will accept a motion for partial summary judgment to compel arbitration.

An appropriate Order follows.

Dated: March 14, 2019

HON. KEVIN MCNULTY, U.S.D.J.